Milligan, J.,
delivered the opinion of the Court.
On the 21st of March, 1857, a motion was entered in the Circuit Court of Sullivan County, in the name of the State of Tennessee, against B. L. Dulaney, as Sheriff and Revenue Collector, and his sureties in his official bond, for failing to collect and pay over the revenue due the County of Sullivan, for the year ending the 29 th of December, 1856.
This motion was continued until the next Term of the Court; and thereafter, on the 18th of November, 1857, the Sheriff, B. L. Dulaney, filed an injunction bill in the Chancery Court of Sullivan County, against the Comptroller of the Treasury of the State, James *308 T. Dunlap, and William. Oartwrigbt, Trustee of said County; and under a fiat of tbe Chancellor, enjoined all further proceedings on the motion at law.
The bill sets up various matters of equity and account, alike applicable as a defense to the recovery of a judgment for either the State or County revenue.
To this bill there is a demurrer, accompanied by the separate answers of the Comptroller and the County Trustee.
On the 19th of May, 1858, Cartwright, Trustee, filed a cross-bill, for the County revenue for the same year, ending in December, 1856, in which the sureties of the Sheriff’, as Revenue Collector, were regularly brought in and made defendants. Afterwards, on the 27th of July following, another motion was entered in the name of the State of Tennessee, against Dulaney and his sureties, for failing to collect and pay over the revenue due the State, for the year 1856. And about the same time, probably on the same day, a suit at common law, was instituted against him alone, in the name of the State, for the revenue due the State for the year 1855.
The declaration, which appears to have been filed on the 17th of November, 1858, lays the amount due for the year 1855, at $3,185.38. To this action the defendant filed various pleas; and thereafter, on the 20th of July, 1859, filed a supplemental bill, through which he obtained an injunction restraining all farther action in the Circuit Court, on the motion for the State revenue for the year 1856; and also, in the suit *309 at common law, for the revenue for the year 1855. Dulaney alone answered the cross-hill, and Dunlap the supplemental bill. The sureties of the Sheriff failed to answer, and as it appears from the final decree of the Chancellor, judgment pro confesso, was taken against them.
In this state of the pleadings, these causes, by consent, were heard together; and for the purpose of saving costs, (as it appears from the entry in the first interlocutory order pronounced in them,) the defendant in the original bill, and the complainant in the cross-bill, waived his demurrer and all pleas to the jurisdiction, and agreed that the Chancellor might take cognizance of the whole matter of controversy between the parties; and an account was ordered; and after repeated exceptions thereto, and modifications and arguments of the parties, the Chancellor held the Sheriff and his sureties in his revenue bond, liable to the County Trustee for the revenue of the County, due for the fiscal year ending the last of December, 1856, with the interest thereon, at the rate of six per cent, per annum, from the last of December, 1856, together with twelve-and-a-half per cent, damages, upon the gross sum, and gave judgment for $6,988.59, with costs, against the administrator of the Sheriff and his sureties in his official bond. Ho judgment was pronounced for the State revenue for the year 1856, because, as it appears from the decree, the sureties of the Sheriff were not, in that case, properly before the Court; and at the instance of the District Attorney, *310 representing the State, the injunction in that case having been previously dissolved, time was given to prosecute the motion pending in the Circuit Court, for the revenue of the year 1856.
For the revenue for the year 1855, the Chancellor gave judgment for $4,529.13 and costs,' against the administrator of the Sheriff alone, and directed an account, to ascertain the damages which accrued to the State, in consequence of the wrongful suing out of the injunction in the latter case.
From this decree the complainant, administrator, etc., in behalf of himself and the sureties in the Sheriff’s official bond, appeal, in error, to this Court.
1st, As to the County revenue for the year 1856, it is insisted, that the decree in favor of William Cartwright, Trustee, is erroneous, because he had no power or authority, under the Statutes of the State, to file a bill, or otherwise to put in motion, a suit against a Sheriff, or Revenue Collector, for failing to collect and pay over the County revenue.
It is admitted that the County Trustee, by the Act of 1835, ch. 15, sec. 15, Car. & Nich., 624, was authorized, in the name of the Chairman of the County Court, to move for judgment against a delinquent Sheriff; but since the passage of the Act of 1848, chap. 167, sec. 1, p. 266, it is insisted., that all suits of this character, must be brought in the name of the State of Tennessee, or of the County, or Chairman of the Court. i
By the Act of 1835, ch. 15, sec. 15, the Sheriff, *311 who, by law, was collector of State and County taxes, was required to give bond for the revenue, payable to the Chairman of the County Court; and by the Act of 1848, all official bonds are required to be made payable to the State of Tennessee; “in whose name,” in the language of the Act, “suits may be prosecuted in favor of the beneficiaries.” These Acts come under review in this Court, in the case of Dasson et al. vs. Clark, 3 Sneed, 438, where it is held, that the Act of 1848 did not necessarily, by ■ implication or otherwise, repeal the Act of 1835. The Court in that case, say: “In 1848, no attempt was made to change the mode of proceeding, or the obligations of the official bond, but only the obligee to whom the penalty was to be paid. This is not a suit for the penalty, nor for the amount of taxes due to the County Trustee from the -Sheriff. The money is to be paid to the Trustee as the financial agent of the County, no matter what name may be used in the proceeding for its collection. But still, the name prescribed by the law must be used; and that, as we have seen, is the Chairman •of the Court.”
We are not disposed to controvert the correctness of this opinion, but if the question w.is’ now for the first time before this Court, we would- bh inclined to hold, that since the Act of 1848, which requires all official bonds to be made payable to the State, all suits or motions arising thereon, should’ be prosecuted in the name of the obligee,. for the use of the beneficiaries. This, we think, would be more in harmony *312 with the general law, and quite in conformity to the language of the Statute itself.
But since, in the case of Dasson et al. vs. Clark, it has been holden, that the Act of 1835 was not repealed by the Act of 1848, and a motion may be maintained against a Sheriff for the County revenue, in the name of the Chairman of the County Court, upon his bond, payable to the State, we need only inquire, whether the law has been so changed by the Code, as to authorize this action by motion or otherwise, to be prosecuted in any other name than the Chairman of the County Court.
It is clear, that the substance of the Act of 1835, and also of 1848, has been carried into the Code, with some modifications; but we are not aware of any provision contained in it, which materially changes the practice in this particular class of cases.
By section 3614, it is declared: £tA motion lies in favor of the party aggrieved — State, County, Corporation, or individual; against any tax assessor, revenue collector, or commissioner, for money in their hands, officially, and not paid over or accounted for, according to law.”
Is the County Trustee a “party aggrieved,” in the sense of the provision of the Statute? We think not. He is the mere fiscal agent of the county, with powers limited by law, which he cannot transcend. He cannot even call the revenue collector to settlement, but is, himself, bound to settle with, and account to, the Judge or ' Chairman of the County Court, for all his official conduct. The County is *313 tbe real party in interest, and the party aggrieved, in cases of official delinquency in the collection of its revenue.
The right of action, in terms, is given to it by the Statute. How, then, can it act? It is, by law, (Code, sec. 402,) a corporation; and the County Court, when assembled, are its lawful representatives and authorized agents. The Judge or Chairman of the County Court, as the official head of the Corporation, and presiding officer of the Court, is, by the Code, section 520, constituted the general supervising agent of the County revenue; and, as such, by section 503, he is authorized to proceed, by motion in the Circuit Court, against the collector and his sureties, for failure to pay over to the Treasurer, and to return his receipt within the time prescribed by law, for the revenue fund, on settlement, to be due the county. And, by section 670, the Judge or Chairman of the Court, is, in like manner, empowered to move against the collector and his sureties, for refusing or neglecting to settle his accounts with him. So, in every view of this class of cases, involving the delinquencies of Sheriffs or County Revenue Collectors, the county, as as a Corporation, acting through its legally constituted agents, must, in the manner prescribed by law, put in motion, and prosecute to judgment, all this particular class of actions. This, we have seen, since the adoption of the Code, is — by the provisions of the Statute, in all cases not expressed, or otherwise provided by law, the county, or its lawful agent — the *314 Judge or Chairman of the County Court. This view of the somewhat complicated provisions of the Code, we think, is in harmony with its spirit, and leaves the question of costs, which in these proceedings might arise, free from all embarrassment.
2d. The next error assigned, is, that the decree of the Chancellor for the State revenue of 1855, is erroneous and unjust, because the printed report of the Comptroller, shows that the revenue for that year, was accounted for and paid.
Admitting the truth of this proposition, does the legal effect insisted on, necessarily follow? As a general rule of law, Courts of Justice will judicially recognize the political constitution, or frame of their own government — its essential political agents, or public officers, sharing in its essential and regular political operations and actions: 1 Greenlf. Evid., sections 1 and 479; Major vs. The State, 2 Sneed, 11. These public Acts and documents, are esteemed Acts of State, and they may, ordinarily, be proved by the production of the printed documents, from a press authorized by law: Ib., section 479. But what is their effect as instruments of evidence? Greenleaf, in his work on Evidence, vol. 1, sec. 451, says: that “To render such documents, when properly authenticated, admissible in evidence, their contents must be pertinent to the issue. It is also necessary that the document be made by the person whose duty it was to make it; and that the matter it contains, be such as belongs to his province, or come within his official cognizance *315 and observation. Documents Raving these requisites, are, in general, admissible to prove, either prima facia, or conclusively, the facts they recite.”
Public documents, of the character of the one in question, are not of such general and public interest, as to make them, in a contest of this description, conclusive of the facts they contain. They are, under the provisions of the Statute, more for the information of the Legislature, than the public at large; and that degree of accuracy, which attaches to a record proper, or even a document produced under a cross-examination, is not presumed to exist in them. At most, when properly admissible, they are but prima facie evidence of the facts of which they assume to speak, and, as in all other cases, may be rebutted. In this case, to say nothing of the fact that the evidence relied on as contained in the Comptroller’s Report, is but an extract from his Report in 1855; carried into his regular Report to the Legislature of 1857, it is at variance with the statement furnished the District Attorney, by the Comptroller, in 1858, and upon which the action at common law was predicated.
The supplemental bill of the Sheriff does not rely on any payment or final settlement with the Comptroller, for the revenue of the year 1855. All he claims, is, various credits for delinquencies, etc., in that year, and prays for an account. The proof, which is voluminous, furnishes no satisfactory explanation of the alleged payment of the revenue for the *316 year 1855; but, on the contrary, shows that it was not, in fact, paid. There is, therefore, no ground for disturbing this part of the Chancellor’s decree.
' 3d. There is nothing, as we conceive, in the objection taken to that part of the Chancellor’s decree, which allows the District Attorney to proceed with his motion at law, against the Sheriff and his sureties, for the State revenue for the year 1856. The sureties of the Sheriff were not, in the equity proceeding, so far as it involved the State revenue of that year, properly before the Court; and it was the duty of the District Attorney, so to conduct the litigation, as to hold them alike responsible with their principals. In doing so, he violated no agreement of record, for which this Court could reverse.
The decree of the Chancellor will be modified, according to this opinion; and the cause remanded to the Chancery Court of Sullivan County, with leave to the County to amend the cross-bill, or, at its option, to proceed by motion at law.